**Richard PARISI, Plaintiff,**

v.

**THE COCA–COLA BOTTLING COMPANY OF NEW YORK, Defendant.**

**No. CV 97–1800(ADS).**

United States District Court, E.D. New York.

Feb. 10, 1998.

AMENDED MEMORANDUM OF
DECISION AND ORDER

SPATT, District Judge.

The plaintiff, Richard Parisi ("Parisi" or the "plaintiff") initiated this action against his former employer, the Coca–Cola Bottling Company of New York, Inc., ("Coca–Cola" or the "defendant") on April 11, 1997 by filing a complaint alleging employment discrimination and retaliatory discharge under the Americans With Disabilities Act ("ADA") and the New York Human Rights Law ("NYHRL"). Presently before the Court are the defendant's motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

According to the complaint, Coca–Cola employed Parisi as a route deliveryman from August 19, 1991 until approximately April 7, 1996, when the company discharged him (Complaint at ¶ 6). Parisi makes the following allegations, which correspond in number to the paragraphs of his complaint:

8. On or about April 7, 1995, plaintiff sustained a severe and disabling on-the-job injury to his right knee and leg for which he received Workers' Compensation benefits.

9. At all times thereafter, plaintiff was and is disabled within the meaning of 42 U.S.C. Section 12102(2)[The Americans with Disabilities Act].

10. At the time he sustained the said injury, plaintiff earned approximately $40,000 from his employment with defendant.

11. Said injury permanently disabled plaintiff from resuming his occupation as route deliveryman.

12. Said injury did not disable plaintiff, after his recuperation, from pursuing other occupations in defendant's employ, for which he was qualified.

13. After he had recuperated from the said injury, in or about January 1996, and continuing thereafter, plaintiff sought reassignment to other positions in the defendant's employ which

Edward Cherney, Woodbury, NY, for Plaintiff.

Pirro, Collier, Cohen & Halpern, LLP., White Plains, NY (Phillip M. Halpern, of counsel), for Defendant.

his injury would not prevent him from performing.

14. Defendant failed and refused to provide reasonable accommodation to plaintiff's condition by failing and refusing to offer him other positions in its employ, for which he was qualified.

. . . . .

17. On or about the 19th day of March, 1996, plaintiff filed a complaint against defendant with the New York State Division of Human Rights ("SDHR"), stating that defendant discriminated against him because of his disability.

18. Upon information and belief, SDHR thereupon forwarded a copy of the said complaint to the Equal Employment Opportunity Commission ("EEOC").

19. On or about March 18, 1997, EEOC served a Notice of Right to Sue upon plaintiff, thereby terminating the proceeding before it.

Coca–Cola did not serve and file an answer to the complaint, instead moving for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds: (1) Parisi has failed to establish a prima facie case of employment discrimination under the Americans with Disabilities Act; (2) Parisi's claims are barred by the New York State Workers' Compensation Statute; and (3) Parisi's claims are barred by the mandatory arbitration clause in the Collective Bargaining Agreement between the company and its employees.

## II. STANDARD OF REVIEW

### A. 12(b)(6) Motion to Dismiss for Failure to State a Claim

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 44 (2d Cir. 1997)(quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). "In considering a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), a district court must limit

itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir.1996)(quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Paulemon v. Tobin*, 30 F.3d 307, 308–09 (2d Cir.1994).

It is not the Court's function to weigh the evidence that might be presented at a trial; instead, the Court must merely determine whether the complaint itself is legally sufficient. *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). Thus, the Court must accept the allegations of the complaint as true, and construe all reasonable inferences in favor of the plaintiff. *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice", Fed.R.Civ.P. 8(f). The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Villager Pond. Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 50, 136 L.Ed.2d 14, (1996). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995)(quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 A.D.2d Cir. 1976[per curiam]).

Finally, while the plaintiff need not set out in detail the facts upon which he bases a claim, he must provide the "defendant fair notice of the nature of the claim and the grounds upon which it rests." *Washington v. James*, 782 F.2d 1134, 1140 (2d Cir.1986)(quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). Where the allegations are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plain-

tiff complains, they are meaningless as a practical matter and legally insufficient to state a claim. *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987)(citing *Ostrer v. Aronwald,* 567 F.2d 551, 553 A.D.2d Cir.1977; *Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir.1976); *Powell v. Jarvis,* 460 F.2d 551, 553 A.D.2d Cir. 1972).

It is under these standards that the Court will review the defendant's motions.

The Court notes that the parties' motion papers refer to matters outside the complaint. In deciding whether the plaintiff has adequately pleaded his ADA claim, the Court declines to consider a report regarding Parisi's knee condition by his treating physician, Dr. Peter J. Ajemian, a copy of which is attached to the defendant's moving papers. Dr. Ajemian's report, dated January 23, 1996, states that Parisi's injured knee prohibits him from "lifting, pushing or pulling," and that he can return to work "in a capacity of either light duty and/or office and/or sales type of work which will not require any type of lifting, pushing or pulling." As noted above, in considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court is required to limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. *Newman & Schwartz,* 102 F.3d at 662. Since Dr. Ajemian's report was neither mentioned in, nor attached to, the complaint, it is not properly before the Court on this motion to dismiss.

## B. The Americans With Disabilities Act

The ADA prohibits an employer from discriminating against an employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA's threshold test also applies to claims under the NYHRL. *See Mohamed v. Marriott Int'l. Inc.,* 905 F.Supp. 141, 156–57 (S.D.N.Y. 1995); *Fitzgerald v. Alleghany Corp.,* 904 F.Supp. 223, 229–30 n. 12 (S.D.N.Y.1995). As defined by the ADA, "discrimination" includes:

> Not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless … [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the … [employer's] business.

Id. § 12112(b)(5)(A). "[O]therwise qualified" means that the individual, "with or without reasonable accommodation, *can perform the essential functions of the employment position that such individual holds or desires.*" Id. § 12111(8)(emphasis added).

■ To state a claim for discrimination based upon the employer's failure to accommodate his disability, the plaintiff must allege facts showing: (1) that the employer is subject to the ADA; (2) that the plaintiff is an individual with a "disability" within the meaning of the ADA; (3) that, with or without reasonable accommodation, the plaintiff is an "otherwise qualified" individual who could perform the essential functions of the job; and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation. *Lyons v. Legal Aid Soc.,* 68 F.3d 1512, 1515 (2d Cir.1995).

There is no dispute between the parties that Coca–Cola is an employer subject to the ADA. Instead, the dispute centers on the second, third and fourth elements of an adequately plead complaint. Specifically, Coca–Cola contends that the plaintiff is not a "qualified individual" with a "disability" within the meaning of ADA, and that transfer to a new position is not a "reasonable accommodation" under the ADA. The Court will address each of these contentions in turn.

### 1. "Disability"

To state a claim under the ADA, a claimant must satisfy a threshold burden that he or she has a "disability" within the meaning of the statute. *Wernick v. Federal Reserve Bank,* 91 F.3d 379, 383 (2d Cir.1996); *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 722 (2d Cir.1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995); *Yaba v. Roosevelt,* 961 F.Supp. 611, 619 (S.D.N.Y. 1997). The term "disabled" is defined under the statute as an individual who: (1) has an

impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2) (1994); *Heilweil*, 32 F.3d at 722. Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Schwartz v. Comex*, No. 96–3386, 1997 WL 187353, at *2 (S.D.N.Y.Apr.15, 1997); 29 C.F.R. § 1630.2(h)(2), (i) (1997).

To allege a disability under the first definition of that term, a plaintiff must allege a factual basis that would support a finding of "substantial limitation of a major life activity," and may not rely upon conclusory allegations of such a limitation. *See* Sherman v. New York Life Insurance Co., No. 96 Civ. 9665, 1997 WL 452024, *3 (S.D.N.Y. Aug.7, 1997).

■ Here, the complaint does not allege that any of the plaintiff's major life activities are impaired as a consequence of his knee injury. Nor does the complaint suggest that plaintiff's condition foreclosed a wide range of employment options. In fact, the complaint states that Parisi "sought reassignment to other positions in the defendant's employ which his injury would not prevent him from performing." (Complaint at ¶ 13). The plaintiff's allegations relate solely to his ability to perform his prior duties at Coca–Cola. Accordingly, the Court presumes that the "major life activity" allegedly impaired is Parisi's ability to work as a route deliveryman. *See Wernick*, 91 F.3d at 383 (finding that the district court properly concluded that the major life activity at issue was plaintiff's ability to work where the complaint focused exclusively on such concerns).

■ In the Court's view, the plaintiff fails, as a matter of law, to allege that he suffers from a "disability" within the meaning of the ADA. With respect to a claim of a disability that substantially limits one's ability to work, "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Heilweil*, 32 F.3d at 722 (citing *Daley v. Koch*, 892 F.2d 212, 215 A.D.2d Cir.1989); *Maulding v. Sullivan*, 961 F.2d 694, 698 (8th Cir.1992)(holding that a pharmacologist's

sensitivity to chemicals, which prevented her from working in a lab, did not substantially limit her employment opportunities); *Daley v. Koch*, 892 F.2d 212, 215 (2d Cir.1989)(finding that being declared unsuitable for the position of police officer, because of poor judgment, irresponsible behavior, and poor impulse control, was not a substantial limitation of a major life activity). The Second Circuit has observed that this view is consistent with the applicable regulation, 29 C.F.R. § 1630.2(j)(3)(i), which provides in pertinent part:

> "With respect to the major life activity of working[,] . . . [t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.*"

*Wernick*, 91 F.3d 379, 383 (citing 29 C.F.R. § 1630.2[j][3][i])(emphasis added). For example, in *Heilweil*, 32 F.3d 718, a hospital's former blood bank administrator was fired after informing the hospital that her doctor told her she could no longer work there because the facility's ventilating system worsened her asthma. Under those circumstances, the Second Circuit found that the plaintiff was not a "handicapped" person under the Rehabilitation Act since she was medically restricted from working in only one particular place in the hospital. 32 F.3d at 723 (*citing Byrne v. Board of Education*, 979 F.2d 560, 565 (7th Cir.1992)). Here, too, the plaintiff has alleged only that he has a knee injury that precludes his employment as a route deliveryman with Coca–Cola, and no more. In the Court's view, the plaintiff has failed to state a "disability" as a matter of law, and for this reason alone, the complaint should be dismissed.

### 2. "Otherwise Qualified" and "Reasonable Accommodation"

■ Even if the Court were to conclude that the plaintiff had adequately pleaded the "disability" element of his claim, it nevertheless would dismiss the complaint, because the

Court finds that plaintiff has not alleged that he is an "otherwise qualified" individual, and that the defendant failed to provide a "reasonable accommodation" to his purported disability.

As previously noted, an essential element of an ADA claim is an allegation that the plaintiff is "otherwise qualified" for a particular job. *Borkowski v. Valley Central School District,* 63 F.3d 131, 137 (2d Cir. 1995). To be "otherwise qualified," the plaintiff must be "able to perform the essential functions of the job, either with or without a reasonable accommodation." *Id.* at 135 (citing *School Board of Nassau County v. Arline,* 480 U.S. 273, 279, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) and *Gilbert v. Frank,* 949 F.2d 637, 641–42 A.D.2d Cir.1991).

Neither the ADA nor the analogous provisions of the Rehabilitation Act provide a bright-line definition of "reasonable accommodation." Instead, the ADA sets out a nonexclusive list of different methods of accommodation including:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, *reassignment to a vacant position,* acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9) (emphasis added).

The Second Circuit has observed that the notion of "otherwise qualified" is inextricably linked to the meanings of both "essential functions" and "reasonable accommodation." *Borkowski,* 63 F.3d at 135.

Parisi concedes in his complaint that he is unable to perform the essential functions of his job as route deliveryman (Complaint at ¶ 12), and does not allege that any adjustment would permit him to resume his former job. Accordingly, he is not "otherwise qualified" for that job. Nevertheless, Parisi insists that Coca–Cola should have made a reasonable accommodation by giving him one of their "other" positions (Complaint at ¶ 13), the exact nature of which he does not specify in his complaint.

The Court concludes that Parisi's "allegation of failure to transfer [him to another position], without more, is insufficient as a matter of law to state a claim upon which relief can be granted." *Christopher v. Laidlaw Transit Inc.,* 899 F.Supp. 1224, 1227–28 (S.D.N.Y.1995). There is no general duty to transfer a disabled employee unable to perform one job to another available position, absent some showing—not made here—of a contractual right to transfer or an established policy of such transfers. *See Bates v. Long Island R. Co.,* 997 F.2d 1028, 1035 (2d Cir.)(employer may not deny disabled employee contractual right to bid for reassignment by reason of a disability, but "reasonable accommodation generally does not require an employer to reassign a disabled employee to a different position."), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). Thus, an employer need not "provide disabled employees with alternative employment when the employee is unable to meet the demands of his present position." *Christopher v. Laidlaw Transit Inc.,* 899 F.Supp. at 1227 (citing *Bates,* 997 F.2d at 1035). The interpretive guideline issued by the EEOC requires transfer only where an equivalent—*similar*—vacant position for which the employee is qualified exists. (EEOC Appendix to Pt. 1630, Interpretive Guidance on Title I of the Americans with Disabilities Act, 56 Fed.Reg. 35726, 35744 [July 26, 1991]). As one District Court aptly noted:

To construe an employer's obligation to reach as far as this plaintiff suggests would foster a regime of business management by the judiciary instead of management by the duly authorized representatives of the shareholders. By enacting the ADA, Congress did not intend to effect such a sweeping change in the fundamental structure of the American economy. Indeed, nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy.

*Quintana v. Sound Distribution Corp.,* No. 95 Civ. 0309, 1997 WL 40866, *6 (S.D.N.Y.Feb.3, 1997)(citing *Wernick,* 91 F.3d at 384)(internal quotation marks omitted). For these reasons, the Court concludes that the plaintiff has failed, as a matter of law, to adequately plead the "reasonable accommodations" element of an ADA claim.

The Court rejects the plaintiff's suggestion that the Second Circuit's decision in *Stone v. City of Mt. Vernon,* 118 F.3d 92 (2d Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998), dictates a different result. In *Stone,* the plaintiff was a firefighter who suffered an off-duty injury that left him partially paralyzed. *Id.* at 93. Focusing on the essential functions of a "firefighter," the Court of Appeals concluded that there was a factual question as to whether the plaintiff could fulfill the position, precluding summary judgment. *Id.* at 99–100. In arriving at this decision, the Court emphasized that some "firefighters" were assigned to bureaus that did not require the ability to actively "fight fires," such as the Fire Alarm and Fire Prevention Bureaus. *Id.* The Court also highlighted that the Fire Department had an established policy of assigning to such "light duty" bureaus employees who were unable to perform regular, "fire fighting" duties because they either were temporarily disabled, or were permanently disabled by on-duty injuries. *Id.* at 94, 100. These facts led the Court to find that there existed a genuine issue of material fact as to whether the plaintiff could have been "reasonably accommodated" in his previous position of "firefighter" by transferring him to one of the light-duty bureaus. *Id.* at 99–100.

The *Stone* decision is entirely consistent with Second Circuit precedent, set forth above, which instructs that there is no general duty to transfer a disabled employee unable to perform one job to another available position, absent some showing of a contractual right to transfer or an established policy of such transfers. *See Bates,* 997 F.2d at 1035–36. The plaintiff in *Stone* alleged that his disability could have been accommodated in his "firefighting" position, because it included functions he was capable of performing. In addition, the employer in *Stone* had such a policy in place. Here, by contrast, Parisi concedes that he is unable to perform the essential functions of a route delivery man, that he cannot return to that position under any circumstances, and that there is no accommodation that could be made to the "route deliveryman" position which would permit him to remain. Instead, Parisi insists, the defendant should accommodate him by transferring him to "[an]other," *different* position at Coca–Cola (Complaint at ¶ 13). Notably, Parisi has not alleged that there existed a contractual right to transfer or an established policy of such transfers at Coca–Cola. Thus, whereas the plaintiff in *Stone* was seeking to retain the job he had under then existing policies, Parisi insists that he be provided with alternative employment, even though he had no contractual right to transfer and Coca–Cola has no such employment policy. Based on the cases cited above, the Court rejects the analogy to *Stone.*

Finally, the Court observes that the plaintiff has not requested an opportunity to file an amended complaint in the event the Court grants the defendant's motion. The Court declines to grant leave to amend *sua sponte,* since, in the Court's opinion, it would be futile. First, Parisi has flatly stated that there is no way he can perform his prior job, thereby precluding an adequate allegation that he is "otherwise qualified" for the position he held. Second, since transfer to a different position is not a "reasonable accommodation" under the circumstances presented here, Parisi will not be able to assert this essential prong of his ADA claim.

For the reasons stated above, the defendant's motion to dismiss is granted. In view of this decision, there is no reason to decide the alternative bases for the defendant's motion.

## III. CONCLUSION

For the reasons set forth in this opinion, it is hereby

**ORDERED,** that the defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

SO ORDERED.